UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEE ANNA ZANONI,<br><br>                    Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>                    Defendant. | Case No. C14-532-RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Dee Anna Zanoni appeals the denial of her Disability Insurance Benefits application, seeking remand for an award of benefits.  She contends the ALJ erred by (1) improperly discounting the credibility of her testimony, (2) misevaluating the medical opinion evidence regarding her limitations due to fatigue, and (3) finding her capable of performing her past relevant work.  Dkt. 12 at 1.  As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

## BACKGROUND

Following a hearing, the ALJ issued a final decision finding that since Ms. Zanoni's alleged disability onset date of July 1, 2010, she was not disabled. Tr. 19-32.  Utilizing the five-step disability evaluation process, the ALJ found that multiple sclerosis ("MS"), degenerative

REPORT AND RECOMMENDATION - 1

disc disease, and depression were severe impairments that did not meet or equal the requirements of a listed impairment. Tr. 21-22; *see* 20 C.F.R. § 404.1520; 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ also found that Ms. Zanoni had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following additional limitations: she can stand and walk with the assistance of a cane for a total of two hours; sit for about six hours in an eight-hour workday; lift, carry, push, and pull within sedentary exertional limits; never climb ladders, ropes, and scaffolds; frequently balance; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; never be exposed to hazards; and understand, remember, and carry out work that permits at least a 15 minute break approximately every two hours. Tr. 23. Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found Ms. Zanoni could perform past relevant work as a loan clerk. Tr. 30-31. The ALJ also found that Ms. Zanoni could perform other jobs existing in the national economy. Tr. 31-32. Therefore, the ALJ found Ms. Zanoni not disabled. Tr. 32.

## DISCUSSION

**A.     The ALJ's evaluation of Ms. Zanoni's testimony**

The ALJ gave at least two valid reasons to discount Ms. Zanoni's testimony regarding the severity of her symptoms. First, the ALJ found that Ms. Zanoni "alleged she was disabled from working since her last job; however, she admitted that she was 'let go' from her teaching job, along with seven other employees, after new management took over the school rather than due to reasons related to her allegedly declining health." Tr. 28; *see also* Tr. 48-49. This is a clear and convincing reason to discount Ms. Zanoni's testimony. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly discounted claimant's testimony in part due to the fact that he left his job for reasons other than his alleged impairment). Ms. Zanoni argues the ALJ's finding

is erroneous because it is true both that she was laid off from her last job and that she was disabled from working that job due to the standing and walking required. The Court is not persuaded. Ms. Zanoni's testimony that she probably would have continued working if she was not let go, Tr. 49, supports the ALJ's conclusion that she did not stop working due to her impairments. Accordingly, the ALJ properly relied on this reason to discount the credibility of her statements. *See Bruton*, 268 F.3d at 828.

Second, the ALJ found that Ms. Zanoni received Washington State unemployment benefits from the time she was discharged from her last work in June 2010 through the beginning of 2012. Tr. 27; *see also* Tr. 49-50. The ALJ noted that in order to qualify for these benefits, Ms. Zanoni was required to be actively seeking work and ready, able, and willing to immediately accept any suitable work offered. Tr. 27. As the ALJ pointed out, Ms. Zanoni "testified she believed she could work and looked for work as a teacher, as well as for work in other settings such as a convenience store. She understood that she was required to look for, and accept if offered, suitable full time work while claiming unemployment benefits." Tr. 27-28. Ms. Zanoni argues that this finding is legally insufficient because the Social Security Administration has provided for "the concept of an 'unsuccessful work attempt.'" Dkt. 12 at 19 (citing 20 C.F.R. § 404.1574(c) ("Ordinarily, work you have done will not show that you are able to do substantial gainful activity if, after working for a period of 6 months or less, your impairment forced you to stop working or to reduce the amount of work you do so that your earnings from such work fall below the substantial gainful activity earnings level . . . .")). Thus, according to Ms. Zanoni, her receipt of unemployment benefits and statements that she believed she could work are insufficient to find her testimony less than fully credible. *Id.* Ninth Circuit authority contradicts Ms. Zanoni's assertions. Where the record establishes that the claimant held herself out for full-

REPORT AND RECOMMENDATION - 3

time, rather than part-time work, the "receipt of unemployment benefits can undermine a claimant's alleged inability to work full-time." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008). Accordingly, the ALJ properly relied on Ms. Zanoni's representations to Washington State that she was ready and able to accept full-time work to find her testimony less than fully credible. *See id.*

Because the ALJ gave at least two clear and convincing reasons, supported by substantial evidence, to discount Ms. Zanoni's credibility, the ALJ's credibility determination should be affirmed even if the other reasons Ms. Zanoni challenges are invalid. *See id.* at 1162 (including an erroneous reason among other reasons to discount a claimant's credibility does not negate the validity of the overall credibility determination and is at most harmless error where the ALJ provides other reasons that are supported by substantial evidence).

**B.     The ALJ's evaluation of the medical opinion evidence**

Ms. Zanoni challenges the ALJ's consideration of the opinions of treating physician Angeli Mayadev, M.D.; treating psychologist Michelle Toshima, Ph.D.; and examining psychologists William Burkhart, Ph.D., and Brendon Scholtz, Ph.D. Specifically, she contends the ALJ failed to properly consider their opinions regarding her ability to work due to fatigue.

Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting

REPORT AND RECOMMENDATION - 4

clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  Rather than merely stating her conclusions, the ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id*.  (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

### 1. Dr. Mayadev

In January 2012, Dr. Mayadev wrote a letter summarizing the medical findings related to Ms. Zanoni's MS.  Tr. 400.  She opined that Ms. Zanoni required a cane for ambulation, was limited to standing and walking for about two hours in an eight hour workday, had declined motor and cognitive functioning from fatigue, and was restricted to a maximum of three hours a day in repetitive upper extremity activities such a keyboarding.  *Id.*  With respect to fatigue, Dr. Mayadev stated:

> Ms. Zanoni experiences motor fatigue and constant feeling[s] of exhaustion.  Unfortunately, medications and self pacing of activities have not had a positive impact on her level of fatigue.  Fatigue is a complex, potentially disabling symptom experienced by 75% to 95% of patients with Multiple Sclerosis.  Ms. Zanoni not only experiences a daily lack of energy that is not relieved by medications or sleep, but also cognitive fatigue which is characterized by a decline in cognitive functioning following an extended period of cognitive effort (e.g., working).

*Id.*  Dr. Mayadev further opined that Ms. Zanoni was "totally disabled" from working.  *Id.*

The ALJ adopted Dr. Mayadev's opinions regarding use of a cane and the standing and walking limitations, but gave the remainder of the opinion little weight.  First, the ALJ found that there was "insufficient objective evidence in the medical record to corroborate any manipulate limitations."  Tr. 29; *see Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief,

REPORT AND RECOMMENDATION - 5

conclusory, and inadequately supported by clinical findings."). Second, the ALJ found that multiple cognitive tests "showed no significant deficits contrary to Dr. Mayadev's indication that the claimant suffered from 'cognitive fatigue.'" Tr. 29; *see Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with the record properly considered by ALJ in rejection of physician's opinions). Finally, the ALJ rejected Dr. Mayadev's opinion that Ms. Zanoni was disabled because this is a finding reserved for the Commissioner. Tr. 29; *see* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); SSR 96-5p (opinions that a claimant is disabled or unable to work are issues reserved for the Commissioner).

Ms. Zanoni argues that the ALJ erred by failing to specifically address the doctor's opinion that she "experiences motor fatigue and constant feeling[s] of exhaustion" due to MS. *See* Tr. 400. The Commissioner responds that Dr. Mayadev did not assess any work-related limitations associated with fatigue other than a decline of cognitive functioning following an extended period of work. *See, e.g., Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ not required to provide clear and convincing reasons to reject physician's statement when statement did not assess any limitations). Thus the Commissioner maintains that motor fatigue and constant exhaustion resulted in the same limitation as Ms. Zanoni's cognitive fatigue, which the ALJ properly discounted. The Commissioner also asserts that when the ALJ rejected Dr. Mayadev's opinion regarding cognitive deficits and found Ms. Zanoni not credible, the ALJ effectively disposed of the claimed limitations regarding fatigue as not credible.

The ALJ erred. Reading Dr. Mayadev's opinion as a whole, it is apparent that the doctor saw Ms. Zanoni's constant feelings of exhaustion (i.e., "daily lack of energy") as a distinct from cognitive fatigue. *See* Tr. 400 ("Ms. Zanoni not only experiences a daily lack of energy . . . *but*

REPORT AND RECOMMENDATION - 6

*also* cognitive fatigue . . . .") (emphasis added).  Dr. Mayadev's opinion that Ms. Zanoni experiences constant feelings of exhaustion is a limitation that the ALJ should have addressed, contrary to the Commissioner's assertions.  The ALJ addressed each of the other opinions Dr. Mayadev offered, but was silent regarding Ms. Zanoni's constant lack of energy.  *See* SSR 96-8p ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").  In asserting that the ALJ effectively disposed of Dr. Mayadev's opinion on this issue by addressing cognitive fatigue and discounting Ms. Zanoni's credibility, the Commissioner offers an improper post hoc rationalization.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (the court reviews the ALJ's decision "based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking") (citing, *inter alia*, *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases…")).  Moreover, because the hypothetical presented to the vocational expert did not include the resulting limitations, the ALJ's failure to address constant feelings of fatigue was harmful error.  *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (error is harmful where it affects the ultimate nondisability determination); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (a vocational expert's testimony based on an incomplete hypothetical lacks evidentiary value to support a finding that a claimant can perform jobs in the national economy) (citing *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)).

       **2.**      **Dr. Toshima**

Dr. Toshima began treating Ms. Zanoni in February 2012 and diagnosed her with major depression.  Tr. 474.  In August 2012, Dr. Toshima opined that her symptoms from depression

REPORT AND RECOMMENDATION - 7

had a significant impact on her ability to maintain some of her activities of daily living and social functioning.  *Id.*  Dr. Toshima also noted the numerous physical symptoms that Ms. Zanoni reported due to MS.  Tr. 474-75.  She opined:

> Due to a combination of psychiatric and medical symptoms, Ms. Zanoni is not capable of competitive employment at this time or at any time in the future.  From a psychiatric standpoint her depression that results in sleep disturbance, low energy, poor initiation, poor focus and anxiety significantly and markedly interfere with her ability to be focused and to sustain any work effort on a consistent basis.  When you take into account her myriad of medical symptoms associated with her MS, such as motor weakness, balance problems, sensory deficits including reduced fine motor coordination, pain, fatigue, and visual disturbance these further detract from her ability to be successfully engaged in any productive work activity.

Tr. 475.

The ALJ gave little weight to Dr. Toshima's opinion that Ms. Zanoni was precluded from competitive employment because Dr. Toshima "took into consideration the claimant's physical problems stemming from the MS in her rationale, which is outside her area of expertise and therefore undermines the creditability of her assessment regarding the claimant's mental functioning ability."  Tr. 29.  Ms. Zanoni argues error in this finding.  The Commissioner responds that because Dr. Toshima concluded that Ms. Zanoni could not work because of a combination of psychiatric and medical symptoms, and Dr. Toshima was not qualified to assess the severity of Ms. Zanoni's MS, the ALJ properly discounted the opinions.  *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."); *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001) ("Under certain circumstances, a treating physician's opinion on some matter may be entitled to little if any weight.  This might be the case, for instance, if the treating physician . . . offers an opinion on a

REPORT AND RECOMMENDATION - 8

matter not related to his or her area of specialization . . . ."); *see also Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) ("Although Dr. Bielefeld did opine that Buxton could not maintain employment, that opinion was based on Buxton's underlying *physical* conditions, which Dr. Bielefeld, as a psychologist, was not qualified to diagnose.") (emphasis in original, internal citation omitted).

The ALJ erred. The thrust of Dr. Toshima's opinion is that Ms. Zanoni's depression would markedly interfere with her ability to maintain focus and persist at work, and that her MS symptoms would further impair her functioning. Dr. Toshima's opinion regarding the impact of depression was offered independent of her consideration of Ms. Zanoni's MS: "*From a psychiatric standpoint* her depression that results in sleep disturbance, low energy, poor initiation, poor focus and anxiety significantly and markedly interfere with her ability to be focused and to sustain any work effort on a consistent basis." Tr. 475 (emphasis added). The ALJ fails to point to any evidence to substantiate her conclusion that this opinion improperly took into account the physical limitations caused by Ms. Zanoni's MS. Indeed, Dr. Toshima went on to specifically state that Ms. Zanoni's MS symptoms would cause *additional* limitations. *See id.* Furthermore, the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders ("DSM") directs providers to consider general medical conditions that are potentially relevant to the understanding or management of an individual's mental disorder. *See* DSM 29 (4th ed. 2000). There is no evidence that Dr. Toshima acted beyond this directive in offering her opinion regarding Ms. Zanoni's depression. Therefore, the ALJ failed to provide a specific and legitimate reason to discount this opinion. This error was harmful because the RFC and hypothetical to the vocational expert did not account for the limitations Dr. Toshima assessed. *See Molina*, 674 F.3d at 1115; *Matthews*, 10 F.3d at 681.

REPORT AND RECOMMENDATION - 9

### 3. Dr. Burkhart

In September 2010, Dr. Burkhart conducted a neuropsychological evaluation of Ms. Zanoni. Tr. 287-88. He opined:

> Easy energy depletion, still some amount of residual mood instability (despite the Celexa), and the optic nerve/vision difficulties are all reasons that she may want to restrict her work activity or even apply for SSDI. But, based on my examination, most certainly her mood problems alone would not be sufficient reason to render her disabled; and also very clearly, neurocognitive deficits are very mild and much less than her MS history would predict, such that from that standpoint as well, she would not be considered disabled.

Tr. 288. The ALJ gave significant weigh to Dr. Burkhart's opinions. Tr. 29.

Ms. Zanoni argues the ALJ erred by purporting to accept Dr. Burkhart's opinions but failing to adopt his opinion that "easy energy depletion was a reason why [she] might want to restrict her work activity." Dkt. 12 at 22. As the Commissioner suggests, however, the ALJ reasonably interpreted Dr. Burkhart's conclusions. Dr. Burkhart did not outline any functional limitations related to fatigue, and his overall opinion was that Ms. Zanoni was not disabled. Therefore, the ALJ did not err in her consideration of Dr. Burkhart's opinion. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

### 4. Dr. Scholtz

In November 2011, Dr. Scholtz conducted a psychological evaluation of Ms. Zanoni. Tr. 357-62. He opined that Ms. Zanoni appeared "unable to obtain and maintain full time employment based on the physical symptoms related to her MS, which currently include fatigue, vertigo, muscle weakness, anhedonia and decreased visual acuity." Tr. 361. Based on his

1   examination, he opined that Ms. Zanoni was "likely to have little or no trouble understanding,

2   remembering and carrying out simple work instructions" or "making simple work decisions." *Id.*

3   He also found that her thinking and reasoning abilities were not significantly impaired. *Id.* at

4   362. Dr. Scholtz opined that Ms. Zanoni was "likely to have a moderate amount of trouble

5   understanding, remembering and carrying out complex instructions" and "making complex

6   decisions," and was "likely unable to sustain and persist for a normal work week." *Id.* at 361-62.

7       The ALJ gave significant weight to Dr. Scholtz's opinion regarding Ms. Zanoni's mental

8   functioning. Tr. 29. However, the ALJ discounted Dr. Scholtz's "physical assessment opinion

9   with regard to the claimant's MS" because it was outside Dr. Scholtz's area of expertise as a

10  mental health professional and because the treatment records showed that Ms. Zanoni's MS

11  stabilized on treatment. Tr. 29. Ms. Zanoni argues the ALJ failed to properly consider Dr.

12  Scholtz's opinion regarding fatigue. She asserts that her MS was not stable and that fatigue

13  could be assessed by a psychologist as easily as a medical doctor. The Commissioner responds

14  that the ALJ's reasons for discounting Dr. Scholtz's opinion were legally sufficient and

15  supported by substantial evidence.

16      The ALJ erroneously relied on her conclusion that Ms. Zanoni's MS was stable to

17  discount Dr. Scholtz's opinion. Whether Ms. Zanoni's MS had stabilized says nothing about the

18  point to which the disease had progressed at the time the progression stopped. Nevertheless, this

19  error was harmless because the ALJ properly rejected Dr. Scholtz's opinion that Ms. Zanoni was

20  "unable to obtain and maintain full time employment based on the *physical* symptoms related to

21  her MS . . ." Tr. 361 (emphasis added), as outside the doctor's area of expertise. Rather than

22  considering the impact of her physical impairments on her mental impairments, as is

23  contemplated by the DSM, Dr. Scholtz exceeded his expertise as a psychologist and offered an

REPORT AND RECOMMENDATION - 11

opinion regarding Ms. Zanoni's physical impairments that is wholly independent of his opinion of her mental impairments. In such a situation, the Court finds no error. *See* 20 C.F.R. § 404.1527(c)(5); *Holohan*, 246 F.3d at 1202 n.2; *Buxton*, 246 F.3d at 775.

## C. The ALJ's step four finding

Ms. Zanoni argues the ALJ erred in finding that she could perform her past relevant work as a loan clerk. As this matter is being remanded for further consideration of the medical opinion evidence, it would be premature to address this argument now.

## D. Remand for further proceedings

Ms. Zanoni argues the Court should credit the erroneously rejected opinion evidence as true and remand for an award of benefits. The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). Three elements must be satisfied for a court to remand for an award of benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, --- F.3d ----, 2014 WL 3397218, at *20 (9th Cir. July 14, 2014). The third requirement "incorporates what we have sometimes described as a distinct requirement of the credit-as-true rule, namely that there are no outstanding issues that must be resolved before a determination of disability can be made." *Id.* at *20 n.26. If all three requirements are satisfied, the Court must remand for an award of benefits unless "the record as a whole creates serious doubt that the claimant is, in fact, disabled . . . ." *Id.* at *21.

Here, remand for further proceedings is the appropriate remedy. The ALJ has not addressed Dr. Mayadev's opinion regarding constant feelings of exhaustion, and the record may

REPORT AND RECOMMENDATION - 12

need further development regarding that limitation.  In addition, it is not at all clear that if Dr. Toshima's opinion regarding Ms. Zanoni's depression were credited as true, Ms. Zanoni would be disabled within the meaning of the Social Security Act.  This is the case because the VE did not testify regarding the impact of this limitation on Ms. Zanoni's ability to work.  Accordingly, the Court recommends that this matter be remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## CONCLUSION

For the foregoing reasons, the Court recommends the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings.  On remand, the ALJ shall reevaluate Dr. Mayadev's opinion regarding fatigue and Dr. Toshima's opinion, further develop the record as necessary, revise Ms. Zanoni's RFC as appropriate, and proceed with steps four and five of the sequential evaluation process as necessary.

A proposed order accompanies this Report and Recommendation.  Any objection to this Report and Recommendation must be filed no later than **October 9, 2014.**  If no objections are filed, the matter will be ready for the Court's consideration on **October 10, 2014**.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The failure to timely object may affect the right to appeal.

DATED this 25th day of September, 2014.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13